# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON FENNIX, | Case No.  1:14-cv-00181-LJO-GSA-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS |
| v. | |
| D.K. JOHNSON, | (ECF No. 13) |
| Respondent. | |

Petitioner is a state prisoner represented by counsel proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Pet., ECF No. 1).

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation confined at Central California Women's Facility in Chowchilla, California. Petitioner challenges a prison disciplinary hearing held on January 15, 2012, in which she was found guilty of fighting.  As a result, she was assessed a 90 day loss of credits.  Petitioner administratively appealed the decision and also filed petitions for writ of habeas corpus in the state courts.

On November 27, 2013, Petitioner filed the instant federal habeas petition in the Northern

1  District of California, and it was transferred to this Court on February 6, 2014.   Petitioner

2  contends that there was insufficient evidence to find her guilty of the fighting violation.

3        Petitioner's Minimum Eligible Parole Date (MEPD) was in 1997.  (Motion to Dismiss at

4  5, ECF No. 13).  On January 7, 2014, Petitioner had a parole hearing and was denied parole.

5  (Reply at 1, ECF No. 16).

6                                                    **II.**

7                                          **DISCUSSION**

8        **A.  Preliminary Review**

9        Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

10  petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not

11  entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

12        The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer

13  if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of

14  the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990)

15  (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White

16  v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review

17  motion to dismiss for state procedural default).  Thus, a respondent can file a motion to dismiss

18  after the court orders a response, and the Court should use Rule 4 standards to review the motion.

19  See Hillery v. Pulley, 533 F. Supp. 1189, 1194-95 n. 12 (E.D.Cal. 1982).

20        In this case, Respondent's motion to dismiss is based on lack of jurisdiction because the

21  challenged disciplinary decision does not affect the fact or duration of Petitioner's custody.

22        **B.  Habeas Corpus Jurisdiction**

23        In general, the Supreme Court has explained that federal habeas jurisdiction lies for

24  claims that go to "the validity of the fact or length of [prison] confinement." See Preiser v.

25  Rodriguez, 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).  The Supreme Court last

26  discussed the distinction between habeas corpus and § 1983 in Skinner v. Switzer, 131 S. Ct.

27  1289 (2011).  The Court explained:

28              When may a state prisoner, complaining of unconstitutional state

action, pursue a civil rights claim under § 1983, and when is habeas corpus the prisoner's sole remedy? This Court has several times considered that question. Pathmarking here is <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). ... When "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the Court held, § 1983 is not an available remedy. <u>Ibid.</u> "But if . . . the plaintiff's action, even if successful, will not demonstrate the invalidity of [his conviction or sentence], the [ § 1983] action should be allowed to proceed . . . ." <u>Ibid.</u>

<u>Skinner</u>, 131 S. Ct. at 1298.

Further, the Court used conditional language in describing how in cases that do not "necessarily spell speedier release, however, suit may be brought under § 1983." <u>Skinner</u>, 131 S. Ct. at 1293 (citation omitted).

In <u>Preiser</u>, the Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." <u>Preiser</u>, 411 U.S. at 500.  In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 554, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), the Court held that the prisoners could not use § 1983 to obtain restoration of credits because <u>Preiser</u> had held that "an injunction restoring good time improperly taken is foreclosed."

The Ninth Circuit has also wrestled with issues arising out of the interplay between habeas corpus and § 1983 jurisdiction. Ninth Circuit jurisprudence is expressed in three opinions: <u>Bostic v. Carlson</u>, 884 F.2d 1267 (9th Cir. 1989), <u>Ramirez v. Galaza</u>, 334 F.3d 850 (9th Cir. 2003), and <u>Docken v. Chase</u>, 393 F.3d 1024 (9th Cir. 2004).

In <u>Bostic</u>, the Court of Appeals reviewed district court dismissals of a series of habeas petitions filed by a petitioner who in each was challenging disciplinary actions taken against him. 884 F.2d at 1269.  Prison officials had assessed a forfeiture of good-time credits for some of the infractions, but the remainder did not carry a loss of time credits - only a term of segregated housing.  <u>Id.</u>  In each of the petitions, the petitioner sought expungement of the infractions from his disciplinary record.  <u>Id.</u>  The court "assume[d]" that habeas jurisdictions existed over all the petitions, even those challenging discipline with no attendant credit loss, stating:

> Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's claim that he has been denied good time credits without due process of law. [citations] Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restriction of his liberty, such as disciplinary segregation, without due process of law. [citations] Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole. [McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir. 1982)].

Id. at 1269 (emphasis added).  The court did not elaborate on when expungement would be "likely to accelerate" parole eligibility, or otherwise differentiate between parole eligibility and parole suitability.

In Ramirez, a prisoner brought a civil rights action under § 1983, not a habeas petition, to challenge procedures used in imposing disciplinary sanctions of ten days of disciplinary detention, 60 days loss of privileges and a referral to administrative segregation.  334 F.3d at 852-53.  He was not subject to a loss of good time credits.  Id.  He sought expungement of the disciplinary record from his file and an injunction prohibiting the state from considering it "when they fix plaintiff's terms and decide whether plaintiff should be released on parole." Id. at 859 n. 6.  The Court of Appeals held that the favorable termination rule does not apply to prison disciplinary sanctions that do not necessarily affect the fact or length of a prisoner's confinement. Id. at 854-58.  The state had failed to show that expungement of the disciplinary finding would necessarily accelerate plaintiff's release because the parole board could still deny parole on the basis of other factors.  Id. at 859.  ("As Ramirez's suit does not threaten to advance his parole date, his challenge to his disciplinary hearing is properly brought under § 1983.").

The court stated, "Bostic thus holds that the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus." Id. at 858.  From this, the Ninth Circuit reasoned that § 1983 and habeas corpus were mutually exclusive. Importantly, the Ninth Circuit's discussion in Ramirez was focused on the determination of when § 1983 actions were available in light of the favorable termination rule. The court was not focused on the limits to habeas corpus jurisdiction.

In Docken, the petitioner brought a habeas corpus action to challenge the timing of his

1 parole-eligibility reviews.  393 F.3d at 1025-26.  In summarizing Supreme Court authority, the

2 Court of Appeals held that such cases only defined the limitations on § 1983 in light of the

3 exclusive jurisdiction for certain claims only cognizable in habeas. Specifically, the Ninth Circuit

4 stated:

> Thus, although Supreme Court case law makes clear that § 1983 is
> not available where a prisoner's claim "necessarily" implicates the
> validity or duration of confinement, it does not set out any mirror-
> image limitation on habeas jurisdiction. *The Court's central
> concern, in all of the cases cited above, has been with how far the
> general remedy provided by § 1983 may go before it intrudes into
> the more specific realm of habeas, not the other way around.* At
> the same time, though the Court has so suggested, it has never
> squarely held that there is an area of overlap between state habeas
> and § 1983 prisoner suits. Instead, it has policed the distinction
> between the two remedies solely by defining the limits of § 1983,
> as in Heck, and by defining those classes of claims that must be
> brought through habeas, as in Preiser. *Put simply, when the
> Supreme Court has concerned itself with the interaction between §
> 1983 and habeas, it has looked in only one direction.*

13 Docken, 393 F.3d at 1028 (emphasis in original).

14    Accordingly, the court, citing Bostic, acknowledged, based on its own precedent, that

15 habeas jurisdiction was available in some non "core" circumstances. See Id. at 1028-29 ("In

16 [Bostic], for example, we held that 'habeas corpus jurisdiction... exists when a petitioner seeks

17 expungement of a disciplinary finding from his record if expungement is likely to accelerate the

18 prisoner's eligibility for parole.'").

19    Finally, in determining that claims which challenged procedures that lengthen the period

20 between parole review were potentially cognizable in habeas, the court should be reluctant to

21 constrain its jurisdiction to hear such claims.  Id.  ("Ultimately, though Docken's claim may not

22 be the kind of "core" challenge the Preiser Court had in mind, the potential relationship between

23 his claim and the duration of his confinement is undeniable. In such a case, we are reluctant to

24 unnecessarily constrain our jurisdiction to entertain habeas petitions absent clear indicia of

25 congressional intent to do so." (citing  INS v. St. Cyr, 533 U.S. 289, 150 L. Ed. 2d 347, 121 S.

26 Ct. 2271 (2001); Flores-Miramontes v. INS, 212 F.3d 1133 (9th Cir. 2000)).

27    The Docken Court held that claims "likely" to affect the duration of confinement under

28 Bostic were those "with a sufficient nexus to the length of imprisonment so as to implicate, but

1  not fall squarely within, the 'core' challenges identified by the <u>Preiser</u> Court." <u>Docken</u>, 393 F.3d
2  at 1030.

3       In this case, Petitioner contends that expungement of the challenged 2011 prison
4  disciplinary violation and the associated ninety-day credit loss will have an effect on her parole
5  consideration hearings.   Respondent argues that expungement of the challenged 2011 prison
6  disciplinary violation will have no effect on Petitioner's release date from prison because she is
7  "past her minimum eligible parole date and is receiving parole consideration hearings." (Reply
8  3).   In her opposition, Petitioner asserts that the 2014 parole board hearing shows that if
9  Petitioner's petition is successful, the removal of the disciplinary finding at issue will greatly
10 increase the likelihood that the Board of Parole Hearings will find Petitioner suitable for parole
11 at her next hearing.   (Opp'n at 7).   Respondent argues that the primary reason for the parole
12 board denial was Petitioner's trafficking drugs in prison and that the second reason was
13 Petitioner minimizing her behavior as it related to her commitment offense.   (Reply 4-5).

14      Therefore, the Court will examine whether the prison disciplinary record is likely to
15 accelerate the prisoner's eligibility for parole.   <u>See</u> <u>Ramirez</u>, 334 F.3d at 859; <u>Bostic</u>, 884 F.2d at
16 1269.   Although it is possible that the disciplinary infraction may have an impact on future
17 parole consideration, such impact is purely speculative.   In her opposition, Petitioner cites <u>Drake</u>
18 <u>v. Felker</u>, No. 2:07-cv-00577, 2007 U.S. Dist. LEXIS 91585 at *6 (E.D. Cal. Dec. 12, 2007), for
19 the proposition that because the disciplinary hearing finding "might someday affect" the
20 petitioner's parole eligibility, it is cognizable for habeas corpus review.   (Opp'n at 6).   Petitioner
21 cites previous district court orders to support her argument that a disciplinary violation always
22 affects parole eligibility.     However, the Court does not find these district court orders
23 persuasive.[1]

24      Upon review of the pleadings as well as the transcript of the 2014 parole board hearing,
25 this Court concludes that the expungement of Petitioner's 2011 fighting violation is not "likely to
26 accelerate her "eligibility for parole," and therefore, does not affect the duration of her

27

28 [1] The court notes that district court decisions do not constitute precedent and are not binding on other district courts.
   <u>See</u> <u>Gasperini v Center for Humanities, Inc.</u>, 518 U.S. 415, 431, 116 S. Ct. 2211, 135 l. Ed. 2d 659 (1996).

1   confinement.  See Bostic, 884 F.2d at 1269.  While Petitioner points out the Parole Board's

2   discussion at the last parole hearing about the 2011 fighting incident, the 2011 fighting incident

3   was not the only reason or issue that the Parole Board discussed with Petitioner.   In fact, the

4   2011 fighting incident was not even the main or secondary reason for the Parole Board's denial.

5   (Opp'n, Ex. A at 119-21).  The Parole Board's main reason for denying Petitioner parole was her

6   trafficking drugs in prison, and the secondary reason was Petitioner minimizing her behavior

7   about her commitment offense.  (Id.).  Specifically, the Board stated:

8           One of the things that we took into consideration is confidential
            information.  And there's a concern in your Confidential File about
9           your trafficking narcotics.  There's some recent memos in here, as
            recent as August 2013.  And there's some substantiation…so that's
10          the primary reason for the denial.

11          …

12          The other reason for the denial is the Panel still feels that you have
            minimized your behavior as it relates to…this life crime.
13

14   (Opp'n, Ex. A at 119-20).

15          The 2011 fighting incident was given lesser weight by the Parole Board.  (Id. at 119-23).

16   The Parole Board cited Petitioner's disciplinary record as a reason for the denial of parole in

17   addition to the primary and secondary reasons for denial.  (Id. at 122-23).  Moreover, the Parole

18   Board cited to Petitioner's entire disciplinary record, which includes over forty-four (44) 115

19   violations and ninety-five (95) 128 violations, and not just the challenged 2011 fighting incident.

20   (Id. at 123).  While it appears that the Parole Board considered Petitioner's disciplinary record as

21   a reason for denial, it noted that it felt she had "turned the corner" in that area and it commended

22   her "for doing a much better job as far as behavior and impulse control."  (Id.).  The Parole

23   Board also found that Petitioner's psychological evaluation was not totally supportive for parole.

24   (Id. at 122).

25          Therefore, the record demonstrates that the disciplinary conviction did not have a

26   significant impact on Petitioner's January 7, 2014, parole suitability determination.  Thus, on the

27   facts of this case, the nexus between the challenged disciplinary proceeding and Petitioner's

28   suitability for and release to parole is merely speculative, and the expungement of the challenged

disciplinary proceeding is not likely to accelerate release.  Accordingly, the Court finds that there is no federal habeas jurisdiction in this case.

**RECOMMENDATION**

Accordingly, IT IS HEREBY RECOMMENDED that Respondent's motion to dismiss be GRANTED and the petition for writ of habeas corpus be DISMISSED for lack of jurisdiction.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**November 7, 2014**__              _____**/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE